# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRIA MOORE, | Case No. ED CV 14-1179-DMG (DTBx) |
| Plaintiff, | **ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [90]** |
| v. | |
| INTERNATIONAL COSMETICS AND PERFUMES, INC., | |
| Defendant. | |

## I.
## PROCEDURAL BACKGROUND

On July 9, 2015, Plaintiff Dria Moore filed the operative Second Amended Complaint ("SAC") against Defendant International Cosmetics and Perfumes ("ICP") on behalf of herself and others similarly situated. [Doc. # 44.] The SAC alleges that ICP incorrectly designated its Sales and Marketing Employees, or Fragrance Sales Consultants ("FSCs"), as independent contractors, rather than employees, and brings claims for: (1) failure to pay overtime and pay for all hours worked in violation of California Labor Code §§ 204, 510, 511, and 514 and the relevant orders of the California Industrial Welfare Commission ("IWC") ("overtime claim" and "off-the-clock claim"); (2) failure to pay minimum wage in violation of California Labor Code §§ 194, 1197, and

-1-

1197.1 ("minimum wage claim"); (3) failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512 ("meal-and-rest-break claim"); (4) failure to reimburse necessary expenses in violation of California Labor Code §§ 406, 2800, and 2802 ("expense reimbursement claim"); (5) failure to provide accurate wage statements in violation of California Labor Code §§ 226 and 1174 ("wage statement claim"); (6) failure to pay wages due and owing in violation of California Labor Code §§ 201-203 ("unpaid wages claim" and "waiting time claim"); (7) violation of the Unfair Competition Law ("UCL claim"), California Business and Professions Code § 17200 *et seq.*; and (8) relief under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq.* (SAC §§ 29, 31-74.)

On March 17, 2016, the Court granted in part and denied in part Moore's motion for class certification ("Class Cert. Order"). [Doc. # 81.] The Court certified the following class as to the meal-and-rest-break claim, the off-the-clock claim, the wage statement claim, the waiting time claim, and UCL claim[1]:

> All persons who have been employed as "Fragrance Sales Consultants" for Defendant International Cosmetics and Perfumes, Inc., in the State of California at any time on or after April 29, 2010 through the entry of final judgment in this action.

(*Id.* at 35-36.) The Court certified Dria Moore as the representative of the Class and Andrew T. Ryan as Class Counsel. (*Id.* at 36.) On May 4, 2016, the Court denied ICP's motion for reconsideration of the Class Certification Order. [Doc. # 89.]

On May 13, 2016, ICP filed a motion for summary judgment ("MSJ") as to all claims. [Doc. # 90.] On June 3, 2016, Moore filed an opposition ("Opp."). [Doc. # 92.] On June 9, 2016, ICP filed a reply ("Reply"). [Doc. # 93.]

---

[1] The Court declined to certify a class as to the travel time, expense reimbursement, and overtime claims. (Class Cert. Order at 36.) The PAGA claim is certified to the extent that it is derivative of the certified state law claims.

## II.
## FACTUAL BACKGROUND[2]

ICP is a perfume and cosmetics company based in France. (Opposition to Separate Statement of Undisputed Facts ("OSUF") ¶ 2 [Doc. # 92-1].) ICP's senior-level management and staff work out of ICP's New York office, and ICP does not have formal office space anywhere else. (*Id.* ¶ 6.) FSCs work in assigned spaces in specified department stores, and never work out of ICP's New York office. (*Id.* ¶¶ 10-11.)

ICP states that it hires FSCs to sell perfume to shoppers at retail stores that carry ICP's licensed products.[3] (*Id.* ¶ 9.) Moore disputes this characterization of the FSCs' duties, citing the FSC independent contractor agreement ("ICA"), which states that the "Services to be Performed" are "to provide fragrance demonstrator services, (e.g., marketing and advertising of ICP's products) to be scheduled at times mutually agreed upon by Contractor and Company." (*Id.*) (internal citation, quotation marks, and brackets omitted).

FSCs work in department stores, demonstrating ICP perfumes and cosmetics to potential customers and providing them with information about these products. (*Id.* ¶ 13.) Once an FSC has interacted with a potential customer and the customer has indicated an interest in purchasing an ICP product, the FSC escorts the customer to the fragrance counter so that a store employee can ring up the sale if the customer decides to

---

[2] The Court sets forth the material facts, which are uncontroverted except where indicated. The Court responds to objections to evidence only where such evidence is relied upon in the Court's ruling. Moore makes a number of repetitive objections, many of which are non-responsive to the facts asserted. The Court OVERRULES all such blanket or non-responsive objections.

[3] ICP asserts that ICP personnel, retail store managers, and FSCs themselves consider FSCs to be "selling" ICP products and in a "sales position." *See* OSUF ¶¶ 12, 15, 16. These opinions are not determinative of whether FSCs meet the *legal* definition of "outside salespersons" for purposes of the relevant exemption. ICP also notes that the Court has described FSCs as being engaged in "marketing and selling ICP's products." (*Id.* ¶ 17) (citing Class Cert. Order at 2.) The question of whether FSCs were "selling" ICP products for purposes of the outside salesperson exemption was not squarely before the Court at that time, and the Court has made no previous finding regarding whether FSCs were engaged in "selling" in this context.

make the purchase. (*Id.* ¶ 14.) FSCs are not permitted to handle cash or work the cash registers at the department stores where they work. (*Id.* ¶¶ 13-14.)

ICP Account Managers in California oversee 15 to 30 retail stores in their respective territories. (*Id.* ¶ 23.) There is a genuine dispute regarding whether Account Managers work out of their homes or work in the field along with FSCs. (*Id.* ¶ 7.) ICP states that Account Managers visit the retail stores in their territories with "varying frequency, but generally visit stores twice a month or less." (*Id.* ¶¶ 24-25.) Moore contends that Account Managers spend "at least 75% of the[ir] time" in the retail environment. (*Id.* ¶¶ 7, 24, 26-27.)

ICP contends that FSCs typically work in retail stores without direct supervision from ICP Account Managers, and that FSCs "hardly ever" see their managers in person. (*Id.* ¶ 27.) Moore states that Account Managers instruct their FSCs regarding the retail locations where they will be working and what days and hours they are to work, and supervise FSCs via phone calls, email, and text messages when they are not present in person. (*Id.*) ICP tracks the start time, end time, and location of work for all FSCs. (*Id.*)

ICP managers state that prior sales experience is an important consideration in the hiring of FSC candidates. (*Id.* ¶ 20.) Although prior fragrance industry sales experience is not a prerequisite for being hired as an FSC, over 95% of FSCs had prior experience selling for other fragrance or cosmetics companies before being hired by ICP. (*Id.* ¶ 21.)[4]

ICP provides FSCs with training materials that include information about the company's licensed products and recommended techniques for demonstrating ICP products. (*Id.* ¶ 29.) One such technique recommended by ICP is providing hand massages to potential customers. (*Id.* ¶ 32.) Several times a year, ICP holds training

---

[4] Moore states that this fact is disputed, citing to ICP's hiring guide, which directs Account Managers to "think outside the box when scouting" for new talent, and suggests that servers at restaurants who engage in customer service could be well suited for the role of an FSC, and that FSCs may be recruited at job fairs. (OSUF ¶ 21.) This does not create a genuine dispute as to ICP's asserted fact.

conferences for FSCs. (*Id.* ¶ 33.) These conferences provide FSCs with information about ICP products and techniques. (*Id.*)[5]

FSCs are paid an hourly rate for the hours they work in department stores. (*Id.* ¶ 36.) FSCs do not receive a commission on the products they sell. (*Id.* ¶ 41.) ICP will sometimes increase hourly rates for more productive FSCs, and ICP often offers more work hours to the most productive FSCs. (*Id.* ¶¶ 40-41.) FSCs are evaluated on the basis of their sales rates, and ICP has an expectation or goal of $100 per hour in sales. (*Id.* ¶ 37.) Moore received an increase in pay from $21 to $23 per hour based on her productivity as measured by her sales performance. (*Id.* ¶ 39.) Moore understood that her only responsibility as an FSC was to sell at least $100 of fragrance an hour. (*Id.* ¶ 38.)

Retail stores purchase ICP's licensed products wholesale from the company, and then charge ICP a commission of the store's gross retail sales when its licensed products are sold to consumers. (*Id.* ¶ 44.) ICP pays a fee to department stores in order to be permitted to have its products sold at a specific location within the stores. (*Id.* ¶¶ 41, 50.) ICP does not own or lease the property in the retail stores where its products are sold or the display cases in which ICP perfumes are stored and displayed. (*Id.* ¶ 43.) ICP provides detailed specifications for how its products should be displayed and marketed in the stores, including their positioning with respect to other brands, where they are located on the fragrance floor, how many shelves they occupy, and whether the shelves are positioned at eye level. (*Id.* ¶ 43.) The retail stores must approve and accept these specifications, and have discretion to grant or deny such requests and make mid-season changes to a brand's allocated space and location. (*Id.* ¶¶ 45, 47-50.)

---

[5] ICP states that this Court has previously "found" that FSCs received "sales training." (OSUF ¶ 35) (citing Class Cert. Order at 11). The question of whether FSCs were engaged in "selling" products for purposes of the outside salesperson exemption was not addressed at the class certification stage, and the Court did not make a finding regarding whether they were engaged in "sales" for purposes of that legal determination.

# III.
# LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

# IV.
# DISCUSSION

## A. California's Outside Salesperson Exemption

Under California law, "outside salespersons" are exempt from statutory overtime, minimum wage, and meal-and-rest-period requirements. Cal. Lab. Code § 1171 ("The provisions of this chapter . . . shall not include any individual employed as an outside

salesman[.]"); IWC Wage Order No. 7-2001(1)(C), *codified at* Cal. Code Regs. tit. 8, § 11070 ("The provisions of this order shall not apply to outside salespersons.").[6] The applicable wage order defines an "outside salesperson" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." Wage Order No. 7-2001(2)(J).

The California Supreme Court has instructed that "in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees . . . exemptions from statutory mandatory overtime provisions are narrowly construed." *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794, 85 Cal. Rptr. 2d 844 (1999). "The employer bears the burden of proving that the outside salesperson exemption applies." *Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 26, 172 Cal. Rptr.3d 171 (2014) (internal citation omitted).

### 1. Applicability of Federal Law

Federal law is not dispositive in interpreting California statutes, but many of California's labor laws are patterned on federal statutes. California courts have therefore long held that those federal statutes and federal cases interpreting them provide persuasive guidance to courts interpreting California labor laws. *See Brody v. AstraZeneca Pharm., LP*, No. CV06-6862-ABC(MANx), 2008 WL 6953957, at *6 (C.D. Cal. June 11, 2008) (construing outside salesperson exemption); *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1263 (C.D. Cal. 2007), *aff'd sub nom. D'Este v. Bayer Corp.*, 492 F. App'x 721 (9th Cir. 2012) (construing outside salesperson exemption); *Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555, 562, 38 Cal. Rptr. 2d 221, 225 (1995); *Monzon v. Schaefer Ambulance Serv.*, Inc., 224 Cal. App. 3d 16, 39, 273 Cal. Rptr. 615,

---

[6] The outside salesperson exemption does not apply to Moore's individual expense reimbursement claim, but the Court previous determined that expenses incurred during travel time were not compensable. (Class Cert. Order at 28.)

628 (1990).

The Fair Labor Standards Act ("FLSA") includes a similar "outside salesman" exception to minimum wage and overtime laws. 29 U.S.C. § 213(a) (minimum wage and maximum hour provisions shall not apply to "an employee employed . . . in the capacity of an outside salesman"). The California Supreme Court has noted, however, that California's definition of an "outside salesperson" differs somewhat from the federal regulations defining the term "outside salesman." *Ramirez*, 20 Cal. 4th at 796. *Compare* 29 C.F.R. § 541.500 ("outside salesman" defined as "any employee: (1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty); 29 C.F.R. § 541.501 ("Section 3(k) of the Act states that 'sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.") *with* IWC Wage Order No. 7-2001(2)(J) ("outside salesperson" defined as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities.").

The clearest difference between the two regulations is that California law provides a percentage of time that an outside salesperson must spend away from an employer's place of business (more than 50 percent), whereas federal law focuses on the employee's "primary duty." *See Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 640 (S.D. Cal. 2007), *aff'd*, 571 F.3d 935 (9th Cir. 2009) (federal exemption is "similar" to California's outside sales exemption except in that it "does not specify a percentage of time that must be spent outside the office"). Courts have construed the California definition as requiring that the court inquire "first and foremost, how the employee *actually* spends his or her time[,]" *Duran*, 59 Cal. 4th at 26 (emphasis in original), whereas "[t]he federal [outside salesman] exemption . . . adopts a core test which focuses

on the employee's 'primary duty'; if the 'primary duty' test is met, then he or she is deemed exempt regardless of how much time the individual actually spends performing the primary duty." *Ramirez*, 20 Cal. 4th at 798, n. 4.

In this case, there is no dispute regarding the amount of time FSCs spend in a given location, or the nature of their "primary duty." FSCs spend all of their time in department stores, and their primary (and only) duty is to demonstrate and provide information regarding ICP products to potential customers. Instead, the parties' dispute centers around (1) whether FSCs are engaged in "selling" or "sales" and (2) whether the department stores where FSCs work are ICP's "place of business."

### a. Selling or Sales Activity

There is no evident substantive distinction between state and federal law with respect to which type of activities constitute "selling," and Moore has identified none. California law requires that the employee be engaged in "selling" while federal law speaks of "making sales." *See Brody*, 2008 WL 6953957, at *6 ("Given the lack of California statutory or regulatory definitions, or judicial construction of what it means to 'sell' within the terms of the California exemption, reference to comparable federal law is especially sensible here."). It is therefore appropriate for the Court to look to analogous interpretations of federal law in making the determination of what constitutes "selling" within the meaning of California law. While interpretations of federal law are not dispositive in construing California law, they do provide persuasive guidance to the Court in the absence of clear and controlling California law.

### b. Work "Away from Employer's Place of Business"

Both state and federal law state that in order to be subject to the exemption, the employee must work "away from the employer's place of business." This language has been construed differently, however, at the state and federal level. *See Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 242 (C.D. Cal. 2007) ("California law on this point appears to differ from federal law.")

The FLSA defines an employer's "place of business" as including "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales . . . even though the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502.

California regulations do not expressly provide a definition of "place of business," but a California Division of Labor Standards Enforcement ("DLSE") Opinion Letter issued on September 8, 1998, available at http://www.dir.ca.gov/dlse/opinions/1998-09-08.pdf, provides some guidance. The DLSE Letter states that "the employer's place of business" is "not limited, by the IWC definition, to a principal place of business or an administrative headquarters" and instructs that temporary trailers located miles away from an employer's business are included in that definition if they are "owned or controlled by [the] employer." (*Id.* at 1.) The DLSE clarifies that the employer's "place of business" is not determined by whether the physical location is "permanent" rather than "transitory," but rather whether it is "maintained" or "owned or controlled" by the employer. (*Id.* at 3-4.) Opinion letters from administrative agencies are not binding on courts, but may be considered persuasive authority where an issue is not governed by clear expression in the statute or regulations. *Fenning v. Glenfed, Inc.*, 40 Cal. App. 4th 1285, 1295, 47 Cal. Rptr. 2d 715, 720 (1995) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L.Ed. 124 (1944)); *Maddock*, 248 F.R.D. at 242 ("Courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area").

Because California law defining an employer's "place of business" differs substantially from federal law, it is not appropriate for the Court to rely on interpretations of the FLSA in resolving the meaning of "place of business."

**2.    The Meaning of "Selling"**

Courts within this judicial district have opined that "selling" includes activity that is aimed at convincing an individual consumer, and not just the general public, to buy a product, accompanied by an opportunity for some form of compensation or reward to the

salesperson for the success of those endeavors. "'[S]elling' need not involve the literal execution of contracts." *Brody*, 2008 WL 6953957, at *8. "If an employee directs his efforts at persuading a particular customer to purchase a product and is compensated on the basis of his success in doing so then the employee is clearly engaged in sales activity and not mere general promotion of the product." *Dailey*, 2015 WL 4498430, at *3 (internal citation omitted). "The distinction between sales and promotion is more logically made dependent on whether an employee's efforts are directed at persuading particular individuals to purchase a product rather than the general public and whether an employee is compensated based on the employee's success in securing purchases from particular individuals." *Barnick*, 522 F. Supp. 2d at 1265. "In borderline cases, the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling." *Brody*, 2008 WL 6953957, at *8 (internal citation and emphasis omitted). In contrast, "[i]f his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt." *Id.* (internal citation and emphasis omitted).

Outside sales work is differentiated from promotional work in that "promotional work . . . is incidental to sales made, or to be made[.]" *Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-00263 CJC(MLGx), 2009 WL 2781525, at *3 (C.D. Cal. Feb. 6, 2009), *aff'd*, 476 F. App'x 133 (9th Cir. 2012) ("For example, a manufacturer's representative who visits shops to put up displays and posters, rearrange merchandise, or remove spoiled stock, is performing promotional work, not sales work."); *see also Ramirez*, 20 Cal. 4th at 802 (delivery of pre-ordered product did not constitutes a "sales activity" even though failure to properly deliver the product could lead to the loss of the customer).

In this case, FSCs spoke to individual potential customers in order to convince those particular individuals to purchase specific ICP products. Their efforts were not directed at increasing ICP's sales generally, but at selling particular products to a particular person at a particular time, and the only purpose of their activities was to

persuade those potential customers to purchase ICP products at that very moment. *See Delgado*, 2009 WL 2781525, at *6 ("Plaintiffs ha[d] one duty—to speak to physicians on behalf of Ortho in order to persuade the physicians to prescribe Ortho drugs to their patients. . . . [T]his duty is best described as selling [and there is] no evidence to show that Plaintiffs' efforts were directed toward anything else."); *Barnick*, 522 F. Supp. 2d at 1264 (employee was engaged in sales rather than promotion where his "efforts . . . were clearly directed at maximizing the products' [sale] by those particular [customers]" even though he "did not actually request some form of commitment from [customers] during his contact with them").

FSCs were not paid a commission on the products they sold, but they were subject to strict sales quotas, and given increased or decreased pay and hours on the basis of their sales. *See Brody*, 2008 WL 6953957, at *7 ("Although Plaintiff did not earn commissions, he was eligible to earn incentive awards based on market share and/or new prescriptions within his assigned geographical territory. Thus, his compensation was tied, to some extent, on increased sales in his territory."); *Barnick* at 1263 ("Plaintiff's pay was determined at least in part on the basis of sales he generated."). While it is not clear that FSCs always obtained a "commitment" to buy a product from potential customers before escorting them to the cash register, they were credited by ICP for sales from the specific customers to whom they demonstrated ICP products. *See Brody*, 2008 WL 6953957, at * 8 (while plaintiff never "consummated" sales himself, such sales were considered his "own" in that the sales in his area were tracked and credited to him); *Barnick*, 522 F. Supp. 2d at 1264 (failure to obtain a "commitment" from potential purchaser did not indicate that employee was engaged in promotion rather than sales).

FSCs directed their efforts at convincing individual customers to purchase specific ICP products in order to meet their personal sales quotas, and they were to some extent rewarded for their success in doing so. The Court is persuaded that this constitutes "sales" activity for purposes of the outside salesperson exemption under the guidelines applied by a number of district courts in this circuit.

### 3. Employer's Place of Business

As noted above, California regulations do not provide a specific definition of an employer's "place of business." The DLSE has instructed that, under California law, "the employer's place of business" is "not limited . . . to a principal place of business or an administrative headquarters." (DLSE Letter at 1.) Whether a location is designated the employer's "place of business" is not defined by whether an employee's assignment to the location is temporary or permanent, but, rather, whether the location is "maintained" or "owned or controlled" by the employer. (*Id.* at 3-4; *see also Maddock*, 248 F.R.D. at 242 (citing the DLSE Letter definition of outside salesperson as one who works away from property "owned or controlled by their employer.")). This is in contrast with the federal definition, which includes "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales . . . even though the employer is not in any formal sense the owner or tenant of the property." (29 C.F.R. § 541.502.

In this case, ICP pays a fee to the department store in order to have its products displayed in a certain location within the store and to have its FSCs promote ICP products at the retailer locations at set times. ICP does not own the department stores, lease a counter or cash register, or even lease a display case. ICP's products are displayed alongside many others, and, while it provides specifications regarding its desired product placement, the department store must approve and accept any such specifications. While ICP exercises some control over the *FSCs* by directing them as to when and where to work, what sales techniques to use, and holding them to demanding sales quotas, it does not exercise a significant amount of control over the *premises* where they work. The department stores where FSCs work do not constitute ICP's "place of business" for purposes of the outside salesperson exemption.

FSCs spent 100% of their time engaged in "selling" away from ICP's place of business and therefore, assuming that they are employees, they are subject to the outside salespersons exemption under California law.

1 | **B.     Independent Contractors v. Employees**

Moore contends that FSCs are either independent contractors or employees, and that ICP cannot "have it both ways." (Opp. at 8.)  Mutually inconsistent defenses are permissible under federal pleading standards. *See Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989).  ICP has met its burden of establishing that, *if* FSCs are properly classified as employees, they are subject to the outside salesperson exemption.  The Court therefore need not decide whether FSCs are employees or independent contractors, given that independent contractors are also exempt from the relevant wage and hour laws.

# V.
# CONCLUSION

In light of the foregoing, ICP's motion for summary judgment is **GRANTED** in its entirety.  All scheduled dates and deadlines are hereby **VACATED**.

**IT IS SO ORDERED.**

DATED:  June 24, 2016

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE